VICENTE FERDINAND,

   Plaintiff,

v.             ACTION NO. 4:12CV80

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Vicente Ferdinand seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance under Title II of the Social Security Act. 42 U.S.C. §§ 401 – 433. He alleged several errors, including a claim that the ALJ improperly weighed a Veterans Administration (VA) finding that he was completely disabled. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. 636(b)(1)(B).

After reviewing the entire record, the undersigned finds that a recent decision by the Fourth Circuit mandates remand to permit the ALJ to re-evaluate both Ferdinand's VA disability rating and the post-hearing evidence submitted to the Appeals Council. Accordingly, this report recommends that the final decision of the Commissioner be vacated and the matter remanded for further review.

1

# I.  PROCEDURAL BACKGROUND

On August 13, 2008, Ferdinand filed applications for disability insurance benefits ("DIB") alleging disability beginning April 24, 2008. (R. 123-25). The Commissioner denied his applications initially (R. 94-98), and upon reconsideration. (R. 100-02). Ferdinand requested an administrative hearing, which was conducted on April 22, 2010. (R. 51-69).

Following the hearing, Administrative Law Judge ("ALJ") William T. Vest concluded that Ferdinand was not disabled within the meaning of the Social Security Act, and denied his claim. (R. 24-40). The Appeals Council denied review of the ALJ's decision (R. 1-3), thereby making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), on May 21, 2012, Ferdinand filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court to resolve the parties' cross-motions for summary judgment, and Ferdinand's alternative motion to remand.

# II.  FACTUAL BACKGROUND

Ferdinand, a veteran and retired postal worker, was 54 years old at his alleged onset date of April, 24, 2008. (R. 54). He has a college degree and spent 26 years in the postal service, retiring as a station supervisor. (R. 64). In 1976, while serving the Navy in Italy, Ferdinand fell from his vessel and was pinned between the vessel and a dock injuring his back. (R. 346; 724). He left the Navy in 1977 and went to work for the post office.

In 2008, Ferdinand began having difficulty maintaining attendance at work. He retired from the postal service and also applied for a disability rating with the VA. On August 5, 2008, the VA found that Ferdinand had a service-connected disability associated with his 1976 injuries. The VA awarded him 30% disability effective October 24, 2006. The same rating awarded him

2

"individual unemployability" effective April 26, 2008. (R. 722). At the time of the hearing on his claim for Social Security Disability, Ferdinand received both VA disability benefits and his postal service pension. (R. 68).

Much of the medical record relates to Ferdinand's alleged mental impairments related to his diagnosis of PTSD. On April 24, 2008, his alleged onset date, Ferdinand sought treatment at the VA Medical Center in Hampton ("VAMC"). He complained of stress related to his job, anxiety and difficulty sleeping. He believed his 1976 accident in the Navy was producing stress and anxiety whenever he saw ships. (R. 346). He reported to the triage nurse that the post office was giving him deadlines he was not able to meet, that he was under pressure and his heart was racing. (R. 347). His exam revealed a depressed mood and he was referred for further treatment to Psychologist Sonia Aznar.

Dr. Aznar, who had treated Ferdinand previously, noted that he had already been attending PTSD therapy and taking prescribed medications. She observed that he was pleasant, cooperative, alert, oriented, with normal speech, good eye contact, well organized thoughts, intact memory and cognition. (R. 337). She diagnosed him with depressive disorder, not otherwise specified (NOS) and chronic PTSD, but assigned a global assessment of functioning (GAF) score of 65.[1] (R. 338, 485).

Ferdinand primarily treated with VA Psychiatrist Balgit Gill. Dr. Gill saw Ferdinand for his mental health issues consistently from June 2008 to September 2010. Dr. Gill's medical

---

[1] The GAF scale is a numeric scale (0 through 100) used for reporting the clinician's judgment of an individual's overall level of functioning at a specific point in time. A GAF score in the 61-70 range indicates "[s]ome mild symptoms" (e.g. depressed mood and mild insomnia) or some difficulty in social and occupational functioning, but "generally functioning pretty well." Diagnostic and Statistical Manual of Mental Disorders Text Revision pp. 32-4 (4th ed. 2000).

records, which make up the majority of the treatment he received for PTSD, reflect that Ferdinand regularly took his prescribed medications without major side effects. His treatment records noted Ferdinand reported being "bothered by nightmares, and intrusive thoughts related to his trauma." (R. 350). Dr. Gill found, however, that he regularly presented with good eye contact, normal speech, a good fund of knowledge, fair attention and concentration, no memory problems, and goal-directed thoughts. (R. 310, 320, 326, 435, 460, 466-67, 473). During each visit, Dr. Gill assigned a GAF score of 65. (R. 311, 321, 327, 436, 461, 467, 474).

In addition to his regular treatment records, Dr. Gill completed a check-the-box medical statement apparently presented by Ferdinand's attorney to assist in preparing his disability claim. On a form completed in June 2009, Dr. Gill checked or circled answers to report that Ferdinand had moderate limitations in activities of daily living and social functioning. He also circled answers suggesting Ferdinand had difficulties with concentration, persistence and pace as well as repeated episodes of decompensation at work. With regard to several work-related limitations, Dr. Gill indicated that Ferdinand was "moderately limited." These included his ability to remember and carry out detailed instructions, interact appropriately with the general public and work in close proximity to others. However, he found Ferdinand "not significantly impaired" (the lowest available category) in other work-related limitations including the ability to remember and carry out short, simple instructions, perform regular activities, maintain attendance and sustain an ordinary routine without special supervision. The form also permitted Gill to indicate whether Ferdinand was "markedly" or "extremely impaired" in any of these areas, but Dr. Gill did not check any of these boxes. In addition, the form provided ten blank lines for comment which Dr. Gill left blank. (R. 381-82).

4

In addition to treating with Dr. Gill, Ferdinand attended regular therapy at the VA with Social Worker Carlson Pendleton, who coordinated a VA PTSD support group. Pendleton's notes from Ferdinand's regular attendance between May 2009 and February 2010 reflect no significant change, with Ferdinand retaining intact judgment and insight. (R. 431, 438, 449, 458-59, 611-12). Ferdinand's role in the group therapy is almost always characterized as that of a "mentor," who provides support and encouragement to other veterans new to PTSD treatment. (R. 431, 437, 449, 458).

Ferdinand regularly traveled to Panama after retiring and while there he treated with Dr. Carlos Gondola. Dr. Gondola's translated records reveal that Ferdinand presented at various times between 2008 and 2010 with complaints of anxiety, nervousness, and insomnia. He also complained of lower back pain and right-sided problems with grip strength. (R. 369, 372, 376, 378, 582). Dr. Gondola diagnosed chronic lumbalgia, right hand carpal tunnel syndrome, and an anxiety disorder. (R. 372, 378, 578). His usual prescription was for analgesics, NSAIDs, physical therapy, and mental health monitoring. (R. 378, 372). On May 6, 2009, Dr. Gondola wrote that "due to the persistence of his symptoms and long period of treatment, we recommend: permanent disability, . . . periodic physical therapy, and regular monitoring by mental health." (R. 369, 582).

In addition to his treating providers, Ferdinand was examined by Thomas Kupke, PhD in connection with his application for benefits. Dr. Kupke was unable to complete the interview because Ferdinand eventually left, after becoming irritable and accusatory. (R. 706). His notes of the partial evaluation reflect that Ferdinand had a depressed and irritable mood with diminished impulse control and frustration tolerance, but linear thinking, adequate insight and

judgment. (R. 708). Dr. Kupke found Ferdinand gave only vague descriptions of his symptoms and appeared to magnify the impact of his mental health problems. He reported odd movement patterns which appeared to him to be volitional. Dr. Kupke also observed that Ferdinand was "highly motivated to maintain the 'sick' role." Id. Based on this behavior, and the incomplete interview, Dr. Kupke found Ferdinand moderately limited in interacting appropriately with supervisors and coworkers as well as responding to unusual work situations and changes in routine. He found no restrictions in interacting appropriately with the general public. (R. 711).

With regard to his physical condition, Ferdinand primarily treated with Dr. Jian Zhu at the VAMC, as well as with a private physician, Dr. Alvin Bryant. Their medical records reflect that he received prescriptions for ibuprofen and other pain relievers which helped relieve his back pain. (R. 330, 476, 686). Dr. Bryant's examinations produced positive straight leg raising tests and tenderness in the neck, back and right shoulder. (R. 388-89, 562, 565-66). Similarly, Dr. Zhu reported chronic back pain which did not appear to be worsening (R. 452, 659) and mild right-sided carpal tunnel syndrome.

On June 9, 2009, Ferdinand reported to Dr. Zhu that his pain brought on syncope[2] with loss of consciousness. An EEG ordered by Dr. Zhu produced normal results. (R. 437, 643-44). Similarly, cardiac monitoring between June 9, 2009 and July 9, 2009 showed no abnormality. (R. 430). On July 21, 2009, after his EEG and cardiac monitoring were completed, Ferdinand reported no new episodes of syncope since the previous visit. His exam on that date produced positive straight leg raising tests and a limited range of motion in the spine. In a check-the-box medical statement completed that day, Dr. Zhu opined that Ferdinand could stand for two hours

---

[2] Syncope refers to a "temporary suspension of consciousness" also called faint. Dorland's Illustrated Medical Dictionary, 31st ed. 2007, p. 1844.

6

and sit for up to one hour, occasionally lift 10 pounds, bend and stoop, and frequently lift five pounds. The form also included a range of hours Ferdinand could be expected to work each day, and Dr. Zhu circled the answer "1 hour." (R. 412). Dr. Zhu left ten other orthopaedic symptoms unchecked. Among the symptoms not checked were an inability to ambulate, chronic pain and weakness, motor loss, and sensory or reflex loss. (R. 412).

Ferdinand also saw Dr. Seth Tuwiner, a neurologist retained by the Agency to examine Ferdinand in connection with his application for benefits. Dr. Tuwiner recounted Ferdinand's history of PTSD treatment, as well as treatment for his physical symptoms related to his back injury and carpal tunnel syndrome. His physical examination revealed an antalgic gait, unsteadiness, a limited range of motion and pain on straight leg raising tests. He also found decreased strength and a limited reflex, but concluded this observation may have been affected by Ferdinand's resistance to examination. He diagnosed lumbosacral radiculopathy and arthritis, but suspected Ferdinand might be magnifying his symptoms. He also diagnosed a possible carpal tunnel syndrome, PTSD, and syncope of unknown origin. Dr. Tuwiner opined that Ferdinand was able to stand and walk for six hours out of an eight hour work day, with no limitations in sitting, and frequent postural limitations with bending, stooping, and crouching. He found Ferdinand could lift up to 20 pounds occasionally and 10 pounds frequently. (R. 264). Dr. Tuwiner found Ferdinand could perform all activities of daily living and had no impairment in his fine motor skill. He had normal range of motion in his neck and hip, but a limited range of motion of his lumbar spine and his muscle strength was generally full. (R. 263-64).

In addition to the examining physicians, Ferdinand's records were also reviewed by state agency physicians Robert Cassell, M.D. (R. 81-92) and Hillery Lake, M.D. (R. 88-89) and state

agency psychologist David Deaver, PhD (R. 75-76). Dr. Cassell found the limitations described by Dr. Tuwiner relied too much on Ferdinand's subjective complaints, and were not supported by the medical record. (R. 90-91). Both Dr. Deaver and Dr. Lake found Ferdinand had no restriction in his activities of daily living and no difficulty in maintaining social functioning, concentration, persistence, and pace. Neither found repeated episodes of decompensation.

After the hearing on his claim, the ALJ requested another consultative exam and Ferdinand presented to Gary Smith, M.D., board certified in physical medicine and rehabilitation. Dr. Smith noted the same "unusual motor movements" observed by Dr. Kupke, which he described as "tics." He found nothing unusual in Ferdinand's physical examination, concluding there was no indication of pain while sitting, standing or walking. (R. 714). Dr. Smith found normal extremity strength except for 4/5 strength in his grip. Dr. Smith noted that Ferdinand used a cane to ambulate, but his gait and station were normal or only mildly abnormal. (R. 717). Dr. Smith did believe the cane improved Ferdinand's gait and concluded it was medically necessary if Ferdinand walked more than 10 yards at a time. Like Dr. Tuwiner, Dr. Smith did not believe Ferdinand gave full effort during the testing. He diagnosed chronic low back pain and a gait impairment. (R. 715).

In addition to the medical evidence, Ferdinand testified that he left work at the postal service in April 2008 because he was unable to manage the stress. He reported having flashbacks when he passed the Naval ships on his way to work. (R. 56). He estimated he missed six days of work each month prior to leaving the postal service. (R. 62). He described episodes of syncope that resulted in a temporary loss of driving privileges affecting his ability to keep regular attendance. (R. 56-57). With regard to his physical symptoms, Ferdinand stated that he

had difficulty in lifting and bending, but also did not think he could perform a sedentary job because he could not sit for long periods of time. (R. 62). He testified that he mostly watched television and slept, but tried to do things around the house. He did report regular travel to Panama every three to four months to visit his family. He also stated that he drove, mowed his lawn with a riding lawnmower and shopped for himself. (R. 58-59). He stated that he did not have any problems dealing with people. (R. 63). He regularly attends group and individual therapy at the VA.

The ALJ also elicited testimony from a vocational expert who stated that an individual of Mr. Ferdinand's age who is limited to sedentary work with a sit/stand option and no climbing, overhead work, frequent reaching with the dominant right hand and occasional bending or squatting could perform the jobs of information clerk and cashier given his transferrable skills. (R. 65-66). In response to questioning by Ferdinand's representative, the VE also stated that a person with the same limitations who was only able to work one hour per day could not work. (R. 67).

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of

"more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.    ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. To be eligible for SSI payments under Title XVI of the Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. §§ 1382a and 1382b, must also satisfy the basic eligibility and definitional requirements found in 42 U.S.C. §§ 1382(a) and 1382c.

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to

result in death or which has lasted and can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter

v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hays v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

### 1.    ALJ's Decision.

In this case, the ALJ made the following findings under the five part analysis: (1) the ALJ found that Ferdinand had not engaged in substantial gainful activity since April 24, 2008, the alleged onset date; (2) Ferdinand had severe impairments of lumbar degenerative disc disease and right-sided carpal tunnel syndrome, but his alleged mental impairments due to PTSD were non-severe; (3) his combination of impairments did not meet one of the listed impairments in Appendix 1; (4) Ferdinand had the RFC to perform a limited range of sedentary work with a sit-stand option and specified postural limitations. Finally, although the ALJ concluded that Ferdinand could not perform his past relevant work, he did identify jobs which exist in substantial numbers in the national economy which Ferdinand could perform. (R. 29-40).

In his motion for summary judgment, Ferdinand argues five errors by the ALJ which require remand. First, he claims the ALJ failed to give proper weight to the opinions of his treating physicians, particularly Dr. Zhu and Dr. Bryant. He also contends the ALJ erred by finding Ferdinand's mental impairments were non-severe, and improperly evaluated his credibility. Finally, he argues the ALJ failed to properly weigh the VA finding that he was

completely disabled, and failed to analyze new material evidence submitted after the hearing, thus requiring remand.

For the reasons set forth in detail below this report concludes that a post-hearing change in Fourth Circuit precedent mandates remand for the ALJ to perform a more detailed analysis of Ferdinand's VA disability rating. Because this analysis necessarily affects the ALJ's other findings concerning Ferdinand's RFC and ability to work, the undersigned makes no finding or recommendation concerning the ALJ's original conclusions on those issues.

**2.**     **The Commissioner's final decision did not adequately evaluate evidence of the VA's prior finding that Ferdinand was completely disabled in light of new Fourth Circuit precedent requiring that the VA's finding be given "substantial weight."**

At the time of the hearing, Ferdinand had been awarded a disability rating of "individual unemployability" from the VA. However, at the hearing the ALJ received scant evidence to establish a basis for the VA's decision. Ferdinand submitted a one-page letter addressed to Ferdinand and "provided to assist . . . in obtaining a Virginia Disabled Veterans license tag." The letter recites that Ferdinand is a war-time veteran rated as being "individually unemployable and permanently and totally disabled due to service connected causes." (R. 189). In addition, a one-page VA rating document discloses that the decision was based on a variety of conditions, including Ferdinand's PTSD. (R. 126). The rating form relates that Ferdinand was found to have a 40% service-connected disability related to his lower back injury, a 40% disability for each lower extremity due to the same condition, a 40% disability of the right metacarpal due to a "healed fracture," and a 30% rating from October 24, 2008 due to his PTSD. Neither the license tag letter, nor the single page rating form included any discussion of the medical evidence

13

supporting the VA's decision, or the rationale supporting either the percentage disability or the VA's overall rating of individual unemployability. Ferdinand did not offer any other evidence concerning the basis for the VA's determination when he testified before the ALJ.

In his opinion, the ALJ cited the VA letter and noted that Ferdinand had been found 100% disabled. The opinion also notes, however, that such determinations are not binding on the Social Security Administration. The ALJ observed that disability determination for Social Security benefits must be made according to Social Security law. (R. 29).

At the time of the hearing and presently, Social Security regulations require the ALJ to consider decisions by other governmental agencies related to the claimant's disability. Although not binding, the regulations suggest that the ALJ should "explain the consideration given to these decisions and the notice of decision for hearing cases and in the case record for initial and reconsideration cases." Williams v. Astrue, No. 5:11cv286, 2012 WL 3240467, at *9 (E.D.N.C. Apr. 4, 2012) (unpublished) (citing SSR 06-03P). In this case, the ALJ's brief explanation was commensurate with the evidence in the record before him concerning the VA's determination, and Fourth Circuit precedent at the time. See Williams, 2012 WL 3240467 at *9; Barnett v. Astrue, No. 3:10cv1316, 2012 WL 75046, at *16 (S.D. W. Va. Jan. 10, 2012) ("When comparing the standards for establishing disability promulgated by the SSA to the less exacting standards employed by the VA, the ALJ's decision to give 'little weight' to the VA's determination is entirely reasonable.").

After the parties completed briefing on motions before this Court, however, the Fourth Circuit decided Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012). The new opinion held that the SSA must give "substantial weight" to a VA disability rating. Id. at 345.

14

Like Williams, the Bird opinion acknowledged that the SSA and VA apply different standards, but also noted that "both serve the same governmental purpose of providing benefits to persons unable to work because of a severe disability," and both require extensive medical documentation. Id. at 343. As a result, a disability rating by one of the two agencies is "highly relevant to the disability determination of the other." Id. The opinion also recognized, however, that the "SSA employs its own standards for evaluating a claimant's alleged disability, and [ ] the effective date of coverage . . . under the two programs will likely vary." Id. As a result, even under the new rule, the Commissioner may give less weight to a VA rating "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." Id.

Because the parties' briefing on the motions before this Court concluded prior to the Fourth Circuit's decision in Bird, the Court requested supplemental briefing from both parties on the issue. Not surprisingly, Ferdinand's supplemental brief argues that Bird requires remand or reversal. Given the ALJ's finding of a sedentary RFC with fairly extensive postural limitations, he argues that Bird's mandate to afford his VA disability rating "substantial weight" will likely require an award of benefits. The Commissioner does not agree. He argues that the ALJ's very detailed analysis of the medical record accounted for his disagreement with the scant evidence before him of the VA's rating. Acknowledging that Ferdinand submitted a more detailed summary of the VA rating to the Appeals Council, the Commissioner nonetheless argues that the more detailed evidence was not sufficient to undermine the ALJ's conclusion, or warrant further explanation.

Ferdinand's representative submitted extensive materials after the original hearing decision. (R. 718-861). Most important here, the post-hearing evidence included a four-page

15

explanation of the details underlying Ferdinand's VA rating. (R. 722-25). The new evidence also included a second disability evaluation prepared by Dr. Gill, and a new consulting evaluation prepared by Dr. Nicholas Emiliani, both of which address the extent of Ferdinand's alleged mental disability related to PTSD. Ferdinand also submitted updated records of his treatment at the VAMC (R. 761-86; 847-61) and new records from Panamanian providers Dr. Uriolla and family practitioner, Dr. Neal Sampson. Finally, the supplement included records of a sleep study and related exam by Dr. Eric Weiner, M.D. (R. 820-28).

The Appeals Council considered all of this evidence as expressly stated in its opinion (R. 1, 4-5), found the evidence did not provide a basis for changing the ALJ's decision, and thus denied review. (R. 1) When denying requests for review the Appeals Council is not required to provide detailed analysis of its conclusion on post-hearing evidence. Meyer v. Astrue, 662 F.3d 700, 706 (4th Cir. 2011); Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992); Damato v. Sullivan, 945 F. 2d 982, 988 (7th Cir. 1991). Only when the Council grants review and issues its own decision on the merits do the regulations require it to explain the basis for its decision. Meyer, 662 F.3d at 706 (citing 20 C.F.R. §§ 404.979, 404.1527(f)(3)). Meyer may, however, require remand when the new evidence submitted is not explained and its effect on the record as a whole prevents the reviewing court from concluding that the ALJ's decision was supported by substantial evidence.

Considering the Fourth Circuit guidance in both Meyer and Bird, the undersigned finds the record is insufficient to permit this Court to conclude what weight, if any, was given to Ferdinand's VA rating. To the extent the opinion can be interpreted as affording it only minimal weight, the record as a whole precludes a finding that this component of the ALJ's analysis is

supported by substantial evidence, or that the ALJ would have reached the same conclusion on disability in light of the new standard and the post-hearing evidence submitted to the Appeals Council. Further, the Council's failure to explain the reasons why the additional evidence was insufficient in this case, particularly in light of Bird, mandates remand. See Meyer, 662 F.3d. at 706.

Because the Council received all of the new evidence as part of the Administrative Record, this Court must consider the new evidence in evaluating the ALJ's decision. Wilkens v. Sec'y Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc.). Dr. Gill's second check-the-box form describes Ferdinand as more severely limited than his June 2009 form. He checked boxes indicating Ferdinand suffered from recurrent panic attacks, suicidal ideation, persistent irrational fears, and intrusive recollections of a traumatic experience. Unlike the June form, which found no marked limitations, the September form found Ferdinand markedly limited in the ability to carry out detailed instructions, maintain concentration, complete a normal work week without interruption from psychologically-based symptoms, and interact with the general public. Dr. Gill also checked that Ferdinand was moderately limited in other work-related criteria including the ability to understand and remember one or two-step instructions, sustain an ordinary routine without special supervision and maintain a regular schedule. The September 2010 questionnaire reported Ferdinand's current GAF score as 45, and his highest GAF score in the preceding year as 45. At the conclusion of the September form, Dr. Gill opined that Ferdinand was incapable of even low-stress work due to his emotional, irritable and suspicious

behavior. He concluded that his chronic PTSD rendered him permanently and totally disabled. (R. 734).[3]

In the more detailed rating decision submitted after the hearing, the VA reviews Ferdinand's medical records, as well as the evidence concerning the service-connected cause of his conditions. The rating also includes an explanation of the reasons underlying the VA's decision. None of this material was before the ALJ. The detailed rating decision notes that a 30% disability, which Ferdinand received due to his PTSD, is granted "whenever there is occupational and social impairment with occasional decrease in work efficiency and intermittent period of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal)." Ferdinand was granted individual unemployability by the VA because he had two or more disabilities with a combined evaluation of 70%. The rating decision had previously assessed Ferdinand as 40% disabled due to his service-connected back injury. Because of the two combined disabilities equaling 70%, Ferdinand qualified for individual unemployability if he could show that he was "unable to secure or follow a substantially gainful occupation because of [his] service connected disability." (R. 724-25). In the VA's view, Ferdinand had made both showings as a result of his retirement from the post office which he attributed to anxiety as described elsewhere in this report.

---

[3] Although the second form prepared by Ferdinand's treating provider is relevant to the ALJ's analysis on remand, absent the change in law regarding the VA's rating, it would not likely be sufficient to warrant remand. The new check-the-box form appears to reflect a more severe diagnosis, but such forms are "weak evidence at best" and not entitled to great weight even when completed by a treating physician. Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993); Leonard v. Astrue, No. 2:11cv48, 2012 WL 4404508 (W.D. Va. Sept. 15, 2012) (unpublished). Moreover, Dr. Gill's second check-the-box answer differs sharply – and irreconcilably – with his own treatment records which consistently refer to Ferdinand's stable course of treatment, and mild symptoms. For example, the September 2010 check-the-box form incorrectly reports that Ferdinand's highest GAF score in the preceding year had been a 45. In fact, Dr. Gill's records report no GAF score in the preceding year below a 65. His post-hearing visit on December 10, 2010 reflects nearly identical findings. (R. 782).

None of this detail is addressed by the ALJ, because it was not presented prior to his opinion. Also, case law prior to <u>Bird</u> did not require any specific weight be assigned to the VA's finding. <u>Bird</u>, 699 F.3d at 343 ("We have not previously addressed the weight that the SSA must afford to a VA disability rating."). In his supplemental briefing, the Commissioner argues that the detail provided by the post-hearing rating decision does not alter or undermine the ALJ's detailed analysis of the same medical records, or his conclusion that Ferdinand was capable of sedentary work. But the Fourth Circuit has now held that VA disability ratings must be given "substantial weight," unless the record "clearly demonstrates" the reasons why it should be given less weight. In addition, the Appeals Council considered the much more detailed summary of the VA ratings decision before concluding that it did not warrant remand or a new decision. While the Appeals Council was not required to explain its refusal, "an express analysis of the Appeals Council's determination would be helpful for purposes of judicial review." <u>Meyer</u>, 662 F.3d at 906 (quoting <u>Martinez v. Barnhart</u>, 444 F.3d 1201, 1207-08 (10th Cir. 2006)). The absence of such analysis does not preclude judicial review when "the record provides an adequate explanation of the [C]ommissioner's decision." <u>Meyer</u>, 662 F.3d at 707. In this case, however, post-hearing changes in the law and the record make it impossible "to determine whether substantial evidence supports the ALJ's denial of benefits." <u>Id.</u> After reviewing the detailed rating decision, the undersigned is unable to conclude that the ALJ would have assigned the VA rating minimal weight given this new Fourth Circuit guidance <u>and</u> the detailed post-hearing evidence concerning Ferdinand's VA disability. In such circumstances, the appropriate remedy is remand.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court DENY the Commissioner's Motion for Summary Judgment (ECF No. 12), DENY the Plaintiff's Motion for Summary Judgment (ECF No. 9), and GRANT Plaintiff's Motion for Remand (ECF No. 10), vacate the prior decision and remand the case for further consideration in light of the post-hearing evidence and changes in the law concerning Ferdinand's VA disability rating, and its impact on this claim for benefits.

## VI.    REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.    A district judge shall make a _de novo_ determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

February 28, 2013

**Clerk's Mailing Certificate**

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

        Joel C. Cunningham, Jr. PC
        120 Edmunds Blvd
        PO Box 459
        Halifax, VA 24558

        Mark Anthony Exley
        United States Attorney Office
        101 W Main St
        Suite 8000
        Norfolk, VA 23510

                Fernando Galindo, Clerk

      By _____
           Deputy Clerk

         _____, 2013